UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DOUGLAS ELWOOD HAYNES,

      Petitioner,

v.                            Case No. 3:20-cv-1296-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Douglas Elwood Haynes, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] He proceeds on an Amended Petition (Doc. 5). In the Amended Petition, Haynes challenges a 2012 state court (Duval County, Florida) judgment of conviction for first-degree murder and armed robbery. He raises two grounds for relief. See Amended Petition at 17-41. Respondents submitted a Response to the Amended Petition (Response; Doc. 10). They also submitted exhibits. See Docs. 10-1 through 10-

---

[1] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

23. Haynes filed a brief in reply (Reply; Doc. 11). This action is ripe for review.

## II. Relevant Procedural History

On July 28, 2011, a grand jury returned an indictment charging Haynes with first-degree murder (Count 1) and armed robbery (Count 2). See Doc. 10-1 at 2. At the conclusion of a trial, a jury found Haynes guilty of the charged offenses. See Doc. 10-19 at 1-4. The court sentenced Haynes to terms of life imprisonment on both counts on September 28, 2012. Id. at 5-10. Haynes appealed, raising a single argument that the trial court abused its discretion in denying Haynes' requested independent act jury instruction. See Doc. 10-7. The First District Court of Appeal (First DCA) per curiam affirmed Haynes' convictions and sentences on September 6, 2013, see Doc. 10-9 at 1, and issued the mandate on September 24, 2013, id. at 2.

On December 6, 2014, Haynes, through counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). See Doc. 10-10. In his Rule 3.850 Motion, Haynes argued his trial counsel was ineffective when she: (1) failed to request a Richardson[2] hearing upon learning of a discovery violation; (2) failed to object to the prosecutor's improper remarks during closing arguments; and (3) misadvised

---

[2] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

2

Haynes regarding his right to testify.[3] Id. at 14-25. Haynes also raised a newly discovered evidence claim. Id. at 4-14. After holding an evidentiary hearing on the Rule 3.850 Motion, the postconviction court denied relief. See Doc. 10-18. The First DCA per curiam affirmed the denial of the Rule 3.850 Motion on October 29, 2020, and issued the mandate on November 19, 2020. Doc. 10-23. Haynes filed the instant action under 28 U.S.C. § 2254 on November 16, 2020. See Doc. 1.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the

---

[3] During the evidentiary hearing, Haynes withdrew the claim that his trial counsel rendered ineffective assistance by misadvising him regarding his right to testify. See Doc. 10-18 at 5.

3

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Haynes'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall

v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because

> the federal habeas court would have reached a
> different conclusion in the first instance.'" <u>Titlow</u>, 571
> U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>,
> 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d
> 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an

examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting

<u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one

to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's

claims were adjudicated on the merits in the state courts, they must be

evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §

2254 habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

12

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Haynes argues his trial counsel was ineffective for failing to object and request a <u>Richardson</u>[7] hearing during the State's redirect examination of Mindy Lethco, an eyewitness to the armed robbery and murder. <u>See</u> Amended Petition at 17-32. According to Haynes, Lethco's testimony materially changed from her prior deposition testimony and as such, the State committed a discovery violation by failing to inform defense counsel before trial of Lethco's allegedly changed account of the incident. <u>Id.</u> Haynes further contends that he suffered prejudice because Lethco's changed testimony negated his defense theories. <u>Id.</u>

---

[7] "A <u>Richardson</u> hearing is a proceeding under Florida law by which a criminal defendant can challenge a discovery violation." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 64 F.4th 1264, 1272 (11th Cir. 2023). "Under <u>Richardson</u>, the reviewing court assesses whether a discovery violation resulted in harm or prejudice to the defendant; in doing so, the court considers circumstances such as whether the violation was 'inadvertent or willful' and 'trivial or substantial' as well as what effect, if any, the violation had on 'the ability of the defendant to properly prepare for trial.'" <u>Id.</u> (quoting <u>Richardson</u>, 246 So. 2d at 775).

Haynes raised a substantially similar claim in his Rule 3.850 Motion.

The postconviction court denied relief, stating in relevant part:

> The <u>Richardson</u> claim is controlled by <u>Bush v.</u>
> <u>State</u>, 461 So. 2d 936, 938 (Fla. 1984):
>
>> The prosecutor's failure to inform the
>> defense counsel of [changes in witness]
>> testimony is not a discovery violation. . . .
>> When testimonial discrepancies appear,
>> the witness' trial and deposition
>> testimony can be laid side-by-side for the
>> jury to consider. This would serve to
>> discredit the witness and should be
>> favorable to the defense. Therefore,
>> unlike failure to name a witness, changed
>> testimony does not rise to the level of a
>> discovery violation and will not support a
>> motion for a <u>Richardson</u> inquiry.
>
> <u>Id.</u> at 938. Likewise, the State's failure to advise
> Defendant before trial about the allegedly changed
> testimony of Mindy Lethco did not constitute a
> discovery violation necessitating a <u>Richardson</u>
> inquiry. Furthermore, based on the deposition
> transcripts and testimony presented at the
> evidentiary hearings, this Court finds that Mindy
> Lethco's deposition testimony could reasonably be
> interpreted to be <u>consistent</u> with her trial testimony.
> Accordingly, because counsel was not deficient for not
> requesting a <u>Richardson</u> inquiry, this claim is denied.

<u>See</u> Doc. 10-18 at 4. The First DCA affirmed the denial of relief without a

written opinion. <u>See</u> Doc. 10-23.

To the extent that the First DCA decided this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Haynes is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of this ineffective assistance claim is not entitled to deference, the claim is without merit. The record supports the postconviction court's conclusion that a <u>Richardson</u> inquiry was not required. Haynes asserts that Lethco's testimony during the redirect examination that Haynes kicked the victim after he told co-defendant Craig Roback (Craig) to stop was "surprise" testimony because Lethco had not raised it during her prior deposition. However, as set forth below, Lethco testified in her deposition that Haynes continued to actively participate in the attack even after he told Craig multiple times to stop:

---

[8] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

Q: You were on your knees, all right, with everything tied behind you. Okay. What's the next thing that happened?

A: They started fighting with [the victim], Craig and [Haynes] both. Craig hit him first. They started fighting back and forth. The masks, [Craig and Haynes] had bandannas on, were pulled off.

Q: All right. So when you say they were fighting back and forth[,] who was fighting back and forth?

A: [The victim] and both Craig and [Haynes] fighting with him.

Q: Okay. And was – were there any weapons at this point?

A: They pulled – they pulled out a gun. It looked like a gun. I'm not sure if it was. Craig had it. . . . He put it in [the victim's] face and told him open his mouth and he did. He said that he would blow his brains out if he didn't give him the money. He said – and **then [Haynes] said, "That would make too much noise. You don't want to do that. You don't want a mess," and Craig stopped.**

Q: Okay. You said Craig pulled a gun out. Where did he pull it out of?

A: The black bag.

. . .

Q: All right. What happened next?

A: [Haynes] and – well, Craig pushed [the victim] to the ground fighting with him, knocked him to the ground and he picked up the coffee table and put it on [the victim's] throat.

Q: Who did?

17

A: Craig did. Shoving it down on [the victim], telling him to just give him the money. While he had it down [Haynes] got his wallet out of his pocket.

Q: [The victim's] wallet?

A: Yes.

Q: Okay.

A: And he threw it to me and told me to look – look through his wallet, which I couldn't. I just told him my hands were behind my back so I didn't do anything. I just stayed still. And when – **[Haynes] said, "Stop. You're screwing it up. He's not going to be able to breath[e]. Take – he told [Craig] to take the coffee table off [of the victim.] [T]hen [the victim] got up again fighting with them. [Haynes] hit him in the face.**

Q: With what?

A: His fist.

Q: Okay.

A: Craig got him, hit him again.

Q: With what?

A: His fist.

Q: Okay.

A: They started struggling. In between all of this [Haynes] had gloves on, rubber gloves. One of them were ripped because he was bleeding from his leg[.] . . .

18

Q: So the glove ripped?

A: Correct.

Q: What happened then?

A: They fought back and forth. There were screaming the whole time at [the victim] to just give the money and they would leave. They didn't want to hurt him, . . . why is he fighting.

Q: All right. What else happened?

A: **They took turns beating him.** I mean, between the both of them, Craig was the aggressor, but anything Craig had said for [Haynes] to do[,] [Haynes] did and then, at one point, [Haynes] became the aggressor when he got upset with [the victim] for not giving him – he kept asking him where the safe was and he kept saying he didn't – [the victim] kept speaking in his [native] language saying, "No". And then [the victim] would say, "No, not giving you money". **Craig kicked him, [Haynes] kicked him.** They used a Mag flashlight.

Q: How many flashlights were there?

A: Just one.

Q: And where did that come from?

A: Out of their duffle bag.

Q: Who – did you see someone pull it out of the bag?

A: The first person who grabbed it was [Haynes].

Q: All right. And what did you see [Haynes] do with the flashlight?

19

A: He pulled it behind [the victim's] neck, up against his throat, choking him from behind.

Q: Okay. What did you see after that?

A: They hit him with the flashlight, Craig did first, in the head. Then [Haynes] hit him with the flashlight. They hit him a couple of times with it. They tied him up with a phone cord. They hit him with the room phone that was on the TV stand.
. . .

Q: What else do you recall seeing?

A: During the fighting they dumped a Coke can on him, hit him in the head with it.

Q: Who dumped a Coke can?

A: [Haynes].
. . .

Q: What else did you see?

A: They pulled him to the – by where the safe was. They started tearing the room apart. They found the safe, told him to give the combination. He said he – he didn't give them one. They kept taking turns still hitting him. Craig said to him that he breaks bones for a living. He has done this before, this means nothing to him. **[Haynes] told him to stop. "You're going to end up killing him," several times.**

Doc. 10-12 at 39-43 (emphasis added). Viewed chronologically, Lethco's above deposition testimony was not inconsistent with her trial testimony.

Moreover, Haynes' trial counsel acknowledged the consistency between Lethco's trial and deposition testimony when she testified during the

evidentiary hearing on the Rule 3.850 Motion. <u>See</u> Doc. 10-15 at 55. After she read Lethco's deposition testimony into the record, Haynes' trial counsel testified:

> Q: Does anywhere in that reading [of Lethco's deposition] indicate to you that Douglas Haynes said stop and then kicked the victim afterwards?
>
> A: At the bottom of page 40, line 21, [Haynes] said, Stop, you're screwing it up, he's not going to be able to breath.
>
> Q: Does it give you any indication that [Haynes] kicked him – I'm sorry, that Mr. Haynes kicked him afterwards?
>
> A: According to the testimony, **yes**, on the top of page 42, line 4, Craig kicked him, [Haynes] kicked him. **So if that testimony was in chronological order, then there was a time that Mr. Haynes said stop, he's not able to breathe, and then later or sequentially kicked him – or not sequentially but subsequently . . . kicked him.**

<u>See</u> Doc. 10-15 at 54-55 (emphasis added).

Insofar as Haynes argues the postconviction court erroneously applied Florida law to find there was no discovery violation, discovery is a matter of state law, <u>see generally</u> Fla. R. Crim. P. 3.220, and this Court must defer to a state court's ruling on a matter of state law. <u>Will v. Sec'y, Fla. Dep't of Corr.</u>, 278 F. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a <u>federal</u> constitutional claim, which we consider in light of the clearly established rules of <u>Strickland</u>, when 'the validity of the claim

21

that [counsel] failed to assert is clearly a question of <u>state</u> law, . . . we must defer to the state's construction of its own law.'") (quoting <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)); <u>see also</u> <u>Huddleston v. Sec'y, Fla. Dep't of Corr.</u>, No. 8:16-cv-76-WFJ-AAS, 2019 WL 339225, at *5 (M.D. Fla. Jan. 28, 2019) (holding that "[w]hile the issue before the court is one of ineffective assistance, a question cognizable on federal habeas review, the underlying issue of whether a discovery violation occurred under Florida law and whether counsel should have objected and moved for a <u>Richardson</u> hearing is a question of state law" that binds the court).[9]

Finally, even assuming arguendo deficient performance by defense counsel, Haynes has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if his trial counsel had requested a <u>Richardson</u> hearing. Accordingly, relief on the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Haynes argues his trial counsel was ineffective when she failed to object to the prosecutor's remark, during closing argument, that

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Haynes' incriminating text messages to his girlfriend "can't now be explained away." <u>See</u> Amended Petition at 32-40 (quoting Doc. 10-5 at 11). Haynes asserts this statement constituted improper "burden shifting and . . . comment[ed] on Haynes' right to remain silent, prejudicing the outcome of the trial." <u>See</u> Amended Petition at 32.

Haynes raised a substantially similar claim in his Rule 3.850 Motion. The postconviction court denied the claim, stating in pertinent part:

> [A]s to the improper closing argument claim, Defendant takes issue with the State arguing that Defendant's incriminating text messages "can't now be explained away." This statement was made in response to text messages Defendant sent his girlfriend, Kristi Leppard, following the botched robbery and murder, including:
>
> - "Look, baby, be there in a sec. I'm sorry, I think we fucked up."
> - "Open door when I call you, I got a [sic] shower and kind of need to leave. Shit went too far. Delete all texts."
>
> Defendant claims the can't-be-explained-away comment constitutes improper burden shifting.
>
> Regardless of the propriety of the State's comment, Defendant was not prejudiced. Given the mountain of evidence establishing Defendant's guilt, there is no reasonable possibility that Defendant would have been acquitted if not for this single statement at closing. Accordingly, this claim is denied.

Doc. 10-18 at 4-5 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. See Doc. 10-23.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Haynes is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys' arguments were not evidence. See Docs. 10-2 at 8, 10-4 at 184; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions"). After reviewing the record, viewing the prosecutor's remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir.

2011), the Court is convinced that the remark at issue did not result in a due process violation.[10]

On this record, Haynes has failed to carry his burden of showing that his trial counsel's representation fell outside the range of reasonably professional assistance. And, even assuming arguendo deficient performance by defense counsel, Haynes has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if his counsel had objected to the prosecutor's remarks. Accordingly, Haynes is not entitled to federal habeas relief on the claim raised in Ground Two.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Haynes seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Haynes "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[10] The reversal of a conviction is warranted only when improper comments by a prosecutor have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted); Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1291 (11th Cir. 2012) (citation omitted).

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.    The Amended Petition (Doc. 5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.     If Haynes appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of February, 2024.


**MARCIA MORALES HOWARD**
United States District Judge



Jax-10  2/6
C:     Counsel of record